# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**862**

**CA 14-00026**

PRESENT: SCUDDER, P.J., SMITH, CENTRA, FAHEY, AND PERADOTTO, JJ.

---

DAVID LEATHERS AND BRENDA LEATHERS,
PLAINTIFFS-APPELLANTS,

V                                                    MEMORANDUM AND ORDER

ZAEPFEL DEVELOPMENT COMPANY, INC., TOWN OF
AMHERST INDUSTRIAL DEVELOPMENT AGENCY AND
NORTHPOINTE COMMERCE PARK, LLC,
DEFENDANTS-RESPONDENTS.
(APPEAL NO. 2.)

---

CONNORS & VILARDO, LLP, BUFFALO (LAWRENCE J. VILARDO OF COUNSEL), AND
DOLCE & PANEPINTO, P.C., FOR PLAINTIFFS-APPELLANTS.

LONDON FISCHER, LLP, NEW YORK CITY (CHRISTOPHER RUGGIERO OF COUNSEL),
FOR DEFENDANTS-RESPONDENTS.

---

Appeal from a judgment of the Supreme Court, Erie County (Patrick H. NeMoyer, J.), entered May 8, 2013. The judgment granted the motion of defendants for summary judgment.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.

Memorandum: Plaintiffs commenced this Labor Law and common-law negligence action seeking damages for injuries sustained by David Leathers (plaintiff) when he fell from a stepladder while climbing out of a corrosion chamber owned by his employer, Bureau Veritas Consumer Products Services, Inc. (BV). BV, which provides third-party quality and safety testing for consumer products, subleased a commercial building from defendant Northpointe Commerce Park, LLC (Northpointe). Northpointe, in turn, leased the property from defendant Town of Amherst Industrial Development Agency (IDA), which owned the property under a sale and leaseback agreement with Northpointe's predecessor in interest. Defendant Zaepfel Development Company, Inc. (Zaepfel) shares common ownership with Northpointe and manages its properties.

Plaintiff worked as a senior technician at BV and was assigned to the corrosion chamber, which simulates the long-term effects of weather on metal products by exposing them to a saline solution. His job duties included cleaning the chamber between tests. On the date of the accident, plaintiff opened the lid to the chamber and noticed water on the bottom of the chamber, which indicated that the drain inside the chamber was clogged. Plaintiff took apart the PVC piping

leading to the drain and attempted to remove the clog using an air hose and fish tape. When that did not work, he sprayed water into the pipe, which broke up the clog. Plaintiff sprayed down the chamber from the outside but, because the floor of the chamber was still dirty, he climbed into the chamber to clean the floor. As plaintiff was exiting the chamber onto a stepladder, the ladder became unstable and he fell to the ground.

Supreme Court granted defendants' motion for summary judgment dismissing the amended complaint and denied plaintiffs' cross motion for partial summary judgment on liability under Labor Law § 240 (1), and this appeal ensued. We note at the outset that plaintiffs have abandoned any contention with respect to the propriety of the court's dismissal of the Labor Law § 241 (6) and common-law negligence causes of action (*see Ciesinski v Town of Aurora*, 202 AD2d 984, 984).

Addressing first the Labor Law § 240 (1) cause of action, we conclude that plaintiff was not "repairing" the corrosion chamber at the time he was injured, and thus that he was not engaged in a protected activity under section 240 (1). Rather, defendants established as a matter of law that plaintiff was involved in "routine maintenance in a non-construction, non-renovation context" (*Melski v Fitzpatrick & Weller, Inc.*, 107 AD3d 1447, 1448; *see Abbatiello v Lancaster Studio Assoc.*, 3 NY3d 46, 53; *Wein v Amato Props., Inc.*, 30 AD3d 506, 507). The court therefore properly granted that part of defendants' motion with respect to that cause of action and denied plaintiffs' cross motion. Neither the corrosion chamber nor the components of the "drainage system," i.e., the floor drain and plastic piping, were in need of "repair." Rather, the drain was clogged, at least in part as a result of the normal operation of the chamber. Plaintiff testified at his deposition that the clog consisted of "paper and what looked to be like pieces of wooden dowel from like Q-tips that they use," i.e., parts of samples that had been placed in the chamber on prior occasions, as well as an unknown substance. Although plaintiff and his supervisor testified that dirty conditions in the chamber could potentially compromise test results, there is no evidence that the chamber was " 'inoperable or malfunctioning prior to the commencement of the work' " (*Pieri v B&B Welch Assoc.*, 74 AD3d 1727, 1728). Further, there is no evidence that plaintiff had to use specialized tools or any tools at all to take apart the plastic piping. Indeed, defendants' expert averred that the PVC piping had no mechanical fasteners and was "merely a friction fit, therefore, it would be a routine task to remove." Plaintiff then used an air hose, metal wire, and a water hose to remove the clog, all of which were readily accessible to and used by him in the course of his employment.

Plaintiffs rely heavily on two cases for the proposition that unclogging a pipe constitutes repair work: *Benfanti v Tri-Main Dev.* (231 AD2d 855) and *Crossett v Schofell* (256 AD2d 881). We conclude that those cases are distinguishable. The injured plaintiff in *Benfanti* was an electrician who fell eight feet from a ladder to the ground "while attempting to loosen a drain pipe" (231 AD2d at 855). This Court concluded that "*removal of a portion of the drain pipe leading to the building's main sewer line* for the purpose of

unclogging *and repairing it* constitutes the repair of a structure within the meaning of Labor Law § 240 (1), rather than routine maintenance" (*id.* [emphasis added]).  In *Crossett*, a dairy farmer was "forced to stop filling his silo with haylage when the fill pipe plugged up and became inoperable," and he hired plaintiff Kenneth M. Crossett (Crossett) "[t]o correct th[e] problem" (256 AD2d at 881).  In order to "make the repair," Crossett had to "climb a steel ladder affixed to the silo adjacent to the fill pipe" (*id.*).  As he was "reinstalling the pipe, his safety belt broke, causing him to fall 25 feet to the ground" (*id.*).  The Third Department concluded that "*inasmuch as the fill pipe was inoperable or malfunctioning*, [Crossett] was engaged in repair work and, thus, may maintain a claim under Labor Law § 240 (1)" (*id.* at 882 [emphasis added]).  In our view, plaintiff's actions in this case are far more akin to clearing gutters of debris, an activity that is not protected under Labor Law § 240 (1) (*see e.g. Hull v Fieldpoint Community Assn., Inc.*, 110 AD3d 961, 962, *lv denied* 22 NY3d 862; *Berardi v Coney Is. Ave. Realty, LLC*, 31 AD3d 590, 591; *Beavers v Hanafin*, 88 AD2d 683, 683-684).  Because plaintiff was engaged in routine maintenance in a non-construction, non-renovation context, he is not entitled to the " 'extraordinary protections of Labor Law § 240 (1)' " (*Signs v Crawford*, 109 AD3d 1169, 1170; *see Chizh v Hillside Campus Meadows Assoc.*, 4 AD3d 743, 743-744, *affd* 3 NY3d 664; *Selca v Dutchess Heritage Sq. Partners, LLC*, 115 AD3d 734, 735).

We likewise conclude that the court properly granted that part of defendants' motion with respect to the Labor Law § 200 cause of action.  Plaintiff's accident resulted from the manner in which the work was performed, not from any dangerous condition on the premises, and defendants exercised no supervisory control over the work (*see Lombardi v Stout*, 80 NY2d 290, 295; *Ortega v Puccia*, 57 AD3d 54, 62-63).

Entered:  October 3, 2014                          Frances E. Cafarell
                                                   Clerk of the Court